IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DONALD P. KECK, JR.,

      Plaintiff,

v.                                         Civil Action No. 3:10cv555

COMMONWEALTH OF VIRGINIA, et al.,

      Defendants.

## REPORT AND RECOMMENDATION

This matter comes before the undersigned Magistrate Judge pursuant to 28 U.S.C.

§ 636(b)(1)(B) for a Report and Recommendation on Defendants' motions to dismiss (Docket

Nos. 21, 44, 46), Plaintiff Donald P. Keck, Jr.'s Motion for Leave to File an Amended Complaint

(Docket No. 79), and Keck's Motion to Join Parties Defendant (Docket No. 81). These motions

have been fully briefed. Because the facts and legal contentions are adequately presented in the

briefing before the Court, the Court has determined that oral argument would not aid in the

decisional process.[1] The matter is now ripe for disposition. For the reasons that follow, the

undersigned Magistrate Judge RECOMMENDS that Defendants' motions to dismiss be

---

[1] By Order dated July 13, 2011 and mailed to Keck, the Court stated that any party should contact the Court within eleven days if they desired oral argument on the pending motions to dismiss. (Docket No. 77.) In response, Keck contacted the Court and requested that a hearing be scheduled. By Order dated July 21, 2011 and mailed to Keck at the same address as the July 13, 2011 Order, the Court scheduled a hearing on the pending motions to dismiss for August 29, 2011, at 2:00 p.m. (Docket No. 78.) On August 29, 2011, Keck did not appear for oral argument. After attempting to contact Keck and waiting approximately thirty minutes, the Magistrate Judge took the bench and stated that she would take the matter under advisement and issue a Report and Recommendation based on the briefing before the Court. Keck later contacted the Court, stating that he did not receive the July 21, 2011 Order. Keck filed no written position post-hearing.

GRANTED, Keck's Motion for Leave to File an Amended Complaint be DENIED, and Keck's

Motion to Join Parties Defendant be DENIED.

## I. Factual Background[2]

### A.    The First Investigation of Keck's Computer Account

In 2007, the Virginia Department of Corrections ("VDOC") employed Keck as a

Psychology Associate at its Powhatan Correctional Center. (Compl. ¶ 11.) On July 24, 2007,

Gary Durham, a Virginia Information Technologies Agency ("VITA") and VDOC Site Tech, and

Steve Werby, a VITA and VDOC Information Security Officer, each conducted a search of

Keck's computer, including hidden and protected folders, files, personal information, and e-

mails. (Compl. ¶¶ 19, 23, 39, 41.) Based on their search, Durham reported that Keck "'*appears*

*to have been engaged in potential personal use of a [V]DOC computer*'" (Compl. ¶ 40), and

Werby discovered what he characterized as a "'suspicious file' [which] '*at face value appears to*

*be notes for a planned book, with inmate numbers, names and personal descriptions and staff*

*names and descriptions*'" (Compl. ¶ 205; *see also* ¶ 41). That same day, Werby notified Nick

Broughton, Chief of VDOC's Special Investigations Unit (Compl. ¶ 30), about the "suspicious

file" and "set up a secret and exclusive network share site" that allowed Broughton to view an

image-copy of Keck's account, including his folders, files, and e-mails (Compl. ¶ 42; *see also*

¶ 206). Also that same day, Broughton contacted Robin Hulbert, VDOC's Director of Mental

---

[2] The facts recited here are viewed in the light most favorable to Keck and derive from
the Complaint, documents referenced in or integral to and explicitly relied on in the Complaint,
and documents subject to judicial notice. Reliance on these sources is appropriate when
considering a motion to dismiss. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th
Cir. 2009); *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir.
2004); *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

Health Services, attaching the "suspicious file" for her review, suggesting that Keck had violated VDOC's information technology policy, and asking her for a recommendation as to whether to investigate further. (Compl. ¶¶ 28, 43.)

On July 26, 2007, after Hulbert authorized a formal investigation of Keck's computer account, Broughton assigned the case to Kenny Moore, a VDOC Field Investigator. (Compl. ¶¶ 44-45.) On October 1, 2007, after months of "searching through [Keck's] entire computer account . . . [and] seizing and copying a 'voluminous' amount of [Keck's] personal material," Moore informed Keck of the investigation, presented Keck with copies of the personal files and documents, and interviewed Keck. (Compl. ¶ 46.) At the conclusion of the interview, Keck agreed to remove the personal files from his computer account. (Compl. ¶ 46.) This investigation and accompanying search continued until October 15, 2007 when Moore submitted his Investigative Report. (Compl. ¶ 47.)

Keck alleges that these Defendants did not have authorization, just cause, or legitimate business purposes for this initial search and failed to define the scope or contours of the search. (*See, e.g.*, Compl. ¶¶ 39, 42, 43, 44, 45, 46, 60.)

### B.   The Grievance Filed by Keck's Subordinate Employee

On November 30, 2007, a hiring panel, consisting of Keck, VDOC's Regional Mental Health Clinical Supervisor for the Central Region Eric Braen, and another member, met to consider applicants for Psychologist position #00281. (Compl. ¶¶ 29, 49.) The panel unanimously agreed to recommend to Hulbert that Keck's subordinate employee be selected for the position. (Compl. ¶ 49.) Despite the panel's recommendation, on January 14, 2008, Hulbert re-advertised the Psychologist position #00281. (Compl. ¶ 51.) Keck twice asked Braen about

3

the re-advertisement and the reason for the non-selection, but received no response. (Compl. ¶¶ 52, 55.)

On January 16, 2008, Keck's subordinate employee decided to prepare a grievance, challenging her non-selection. (Compl. ¶ 54.) On January 24, 2008, Keck, "at the request of his subordinate employee, forwarded her previously prepared grievance (protesting discriminatory and improper hiring practices)" to Braen. (Compl. ¶ 55.) On January 29, 2008, Keck, his subordinate employee, Braen, and Kathy Brame, formerly the manager for VDOC's Human Resources Department at Headquarters, met to discuss the grievance filed by Keck's subordinate employee. (Compl. ¶¶ 15, 57.) During this meeting, "Braen repeatedly question[ed] the subordinate employee regarding [Keck's] degree of involvement in her grievance rather than . . . attempting to resolve her issues with the non-selection grieved." (Compl. ¶ 57.)

### C.   The Disciplinary Actions Taken Against Keck

On January 4, 2008, Hulbert informed Keck that she was reviewing the Investigative Report and considering possible disciplinary action. (Compl. ¶ 50.) On January 28, 2008, Braen contacted Keck to inform him that a "Due Process Meeting" would be held to discuss the results of the formal investigation. (Compl. ¶ 56.) During the January 31, 2008 Due Process Meeting, Keck, Hulbert, Braen, and Doug Smith, VDOC's Human Resource Manager for the Powhatan Correctional Center, met to discuss the results of the formal investigation and potential disciplinary actions. (Compl. ¶¶ 17, 58.) The meeting "did not result in any legitimate consideration of mitigative factors as required by policy but rather focused almost exclusively on [Keck's] lack of contrition and refusal to admit wrongdoing." (Compl. ¶ 58.) Following the meeting, Keck "demand[ed] specific answers" as to the authorization, basis, and extent of the

4

search. (Compl. ¶ 222.) On February 5, 2008, "Hulbert respond[ed] that '*users have no expectation of privacy*' per the LOGON BANNER." (Compl. ¶ 223.) This Logon Banner stated that "'*[t]here is no expectation of privacy . . . monitoring **may** occur.*'" (Compl. ¶ 296 (omission in original).)

On February 5, 2008, Hulbert recommended to Brame and William "Buck" Rogers, VDOC's Assistant Director of Operations, that Keck be demoted, thereby reducing his pay, and transferred to a VDOC facility in another region. (Compl. ¶¶ 24, 60.) On February 8, 2008, Brame indicated her concurrence with Hulbert's recommendation but additionally suggested that Keck be suspended and barred from the facility once disciplinary action was taken. (Compl. ¶ 61.) That same day, Braen, Eddie Pearson, the Warden of Powhatan Correctional Center, and G.K. Washington, the Regional Director for VDOC's Central Region, discussed and approved the recommended disciplinary action. (Compl. ¶¶ 25, 26, 62.) On February 11, 2008, Braen notified Keck that a Disciplinary Meeting would be held the next day. (Compl. ¶ 63.) Brame, Smith, and Hulbert denied Keck's request to bring a representative to the Disciplinary Meeting. (Compl. ¶ 63.)

At the February 12, 2008 Disciplinary Meeting, Keck received two Group II written notices based on alleged violations of VDOC's policies regarding downloading and storing personal files on VDOC computers: (1) for failure to follow written policy, and (2) for misuse of state equipment/computer. (Compl. ¶ 65.) The notices stated that the investigation into Keck's computer account "'revealed a voluminous amount of **personal documents**, including one which was of a **sexual nature, two psychological assessments** completed on non-[V]DOC clients, use of his [V]DOC title in a **personal letter** and **documentation of clearly identifiable staff and**

5

**inmates with personal and derogatory comments about them.'"** (Compl. ¶ 418.) Keck alleges that Hulbert, Braen, Smith, and Tammie Estep, the Deputy Warden for Powhatan Correctional Center, issued the written notices "by and through the authority of" Gene Johnson, VDOC's Director, "and with the knowledge and approval of" Rogers, Washington, and Pearson. (Compl. ¶ 65; *see also* ¶¶ 13, 27.) The discipline imposed included a demotion, removing Keck's supervisory authority, reducing his pay by ten percent, and a transfer to another VDOC facility, which Keck states was located eighty-two miles from his residence. (Compl. ¶ 66.)

Following the February 12 meeting, Estep, at Pearson's direction, gave Keck the choice of "returning under security escort to his office to retrieve his personal items . . . or being escorted by security from the property." (Compl. ¶ 68; *see also* ¶ 64.) Keck elected to return in the evening or during the weekend to retrieve his personal belongings. (Compl. ¶ 68.) On February 13, 2008, Estep informed Keck that "Pearson had ordered [Keck] barred from the facility" and that Keck's personal belongings in his office "would be inventoried and boxed by the facility investigator" and "placed outside the facility, unsecured for [Keck] to retrieve." (Compl. ¶ 69.)

Keck alleges that the disciplinary actions taken against him, including the post-disciplinary measures, were exceptional, unique, and excessive. (*See, e.g.*, Compl. ¶¶ 60, 65, 66.) He further contends that they were contrary to policy, procedure, practice, and the law. (*See, e.g.*, Compl. ¶¶ 61, 62, 68.)

On March 3, 2008, Pearson sent an e-mail to Powhatan Correctional Center staff stating that "'there were still a large number of staff who had not removed their personal files . . . from their computer[s]'" and threatening to take disciplinary action against those who failed to remove

personal files by March 15, 2008. (Compl. ¶ 84.) On March 26, 2008, VDOC distributed a memo from Johnson to VDOC staff, indicating that e-mail should not be used for personal material. (Compl. ¶ 90.) That same day, John B. Taylor, VITA and VDOC's Liaison Director, informed VDOC staff "there are still 'personal files, photos, music and/or videos' saved to individuals' 'W' drive and reiterated the need to remove them or 'appropriate corrective action' [would] be taken." (Compl. ¶¶ 18, 91.)

On April 1, 2008, Taylor informed staff for VDOC's Eastern Region that there were still personal materials located on work computers and that corrective action would be taken if such materials were not removed. (Compl. ¶ 94.) On May 19, 2008, Taylor again informed VDOC staff about the continued problem with staff saving personal materials on VDOC computers. (Compl. ¶ 103.) Despite these repeated warnings, VDOC officials took no disciplinary action against anyone else for saving personal materials on VDOC computers. (Compl. ¶¶ 84, 90, 91, 94, 103.)

**D.     The Second Investigation of Keck's Computer Account**

Sometime between January and February 2008, Hulbert directed Werby and Karen Hardwick, VITA and VDOC's Service Level Director, to copy Keck's shared drive and personal account for her and Braen's access. (Compl. ¶¶ 21, 48, 53, 72.) On February 13, 2008, Smith, per Braen's directive, ordered that Keck's shared drive and personal account be disabled. (Compl. ¶ 71.) On February 19, 2008, Keck began working at the VDOC facility where he was transferred and discovered his account had been seized. (Compl. ¶ 73.) Keck learned that only Hulbert and Braen had access to his accounts "and that any files sought [would] need to be justified to them." (Compl. ¶ 73.)

7

On February 29, 2008, Braen received full access to Keck's shared drive and personal account, including Keck's hidden and protected folders and files. (Compl. ¶ 81.) On March 20, 2008, after daily protests to Hulbert and Braen regarding the seizure of his account, Keck met with Braen "to go through [Keck's] seized account on Braen's computer and justify the files that were necessary to be retained, the remainder to be deleted by Braen." (Compl. ¶ 87; *see also* ¶¶ 75, 76, 79, 87.)

On March 28, 2008, Kevin Bircham, a VITA and VDOC Systems Engineer, granted Braen's request for unrestricted access to Keck's account so that files could be modified, added, or deleted. (Compl. ¶¶ 20, 92-93.) From March through October 2008, Braen continued to search Keck's account. (Compl. ¶¶ 239, 328.)

### E. Keck's Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC")

On February 21, 2008, Keck initiated proceedings with the EEOC, and on May 28, 2008, Keck filed a formal Charge of Discrimination with the EEOC. (Compl. ¶ 74; Def. Estep's Mem. Supp. Mot. Dismiss Ex. A.) The Charge of Discrimination alleged retaliation and listed the earliest date on which discrimination took place as November 30, 2007 and the latest date on which discrimination took place as February 12, 2008. (Def. Estep's Mem. Supp. Mot. Dismiss Ex. A.) In the Charge of Discrimination, Keck described his subordinate employee's non-selection, his assistance in forwarding her grievance based on discrimination, and the subsequent disciplinary action taken against him. *Id.* He also stated, "I believe that I was retaliated against in the form of disciplinary write-ups, demotion, pay reduction and involuntary transfer because I participated in a protected activity, in violation of Section 704(a) of Title VII of the Civil Rights

8

Act of 1964 . . . ." *Id.* On May 15, 2010, Keck received a "right to sue" letter from the EEOC. (Compl. ¶ 175.)

**F.    Administrative Grievance Proceedings**

On February 25, 2008, Keck filed a grievance challenging the disciplinary actions taken against him. (Compl. ¶ 77.) From the end of February through May 2008, Keck sent numerous document and Freedom of Information Act ("FOIA") requests to VDOC. (Compl. ¶¶ 77, 86, 96, 102.) When Keck inquired about the status of the document requests, Beatrice Anderson, a VDOC Human Resources Analyst, informed Keck that all relevant requested documents had been provided, even though no documents had been produced, and that no further documentation would be produced. (Compl. ¶¶ 88, 100.) VDOC also denied Keck's FOIA requests because the responses involved personnel file material. (Compl. ¶¶ 89, 97.)

On April 19, 2008, Virginia's Department of Employment Dispute Resolution ("DEDR") designated John V. Robinson as the administrative hearing officer for Keck's grievance. (Compl. ¶¶ 35, 99, 120.) In April and July 2008, Keck contacted Robinson to complain about VDOC's noncompliance with document production and requested that Robinson draw adverse inferences against VDOC due to its noncompliance. (Compl. ¶¶ 101, 104, 105, 107.) In July 2008, Robinson issued three separate orders requiring VDOC to produce certain documents. (Compl. ¶¶ 106, 108, 113.) On July 21 and 22, 2008, Braen and Hulbert produced some documents and e-mails but did not fully comply with Robinson's orders. (Compl. ¶¶ 109-111.)

On July 29, 2008, Elizabeth Thornton, the manager for VDOC's Human Resources Department at Headquarters, appealed Robinson's document production orders to DEDR, stating that the ordered production was overly intrusive and irrelevant to Keck's grievance and that

VDOC had already produced all relevant documentation. (Compl. ¶¶ 16, 114.) On July 30 and August 1, 2008, Keck again complained to Robinson about VDOC's noncompliance with document production and requested that Robinson draw adverse inferences against VDOC due to its noncompliance. (Compl. ¶¶ 115-116.)

On August 20, 2008, Keck elected to proceed with the grievance hearing despite VDOC's "continued and persistent document non-compliance." (Compl. ¶ 117.) On September 25, 2008, Robinson presided over the first day of the administrative hearing on Keck's grievance. (Compl. ¶ 120.) On September 30, 2008, Keck submitted a request to Claudia Farr, Director of DEDR, seeking to expedite the decision on VDOC's appeal to DEDR. (Compl. ¶¶ 34, 121.) That same day, DEDR issued a Compliance Ruling on VDOC's document production.[3] (Compl. ¶ 122.)

On October 7, 2008, Keck notified Robinson and Farr of VDOC's continued noncompliance with his document requests. (Compl. ¶ 123.) On October 8, 2008, Robinson presided over the second day of the administrative hearing on Keck's grievance, and at the close of the hearing, ordered supplemental briefing. (Compl. ¶¶ 124-125.) The next day, Keck submitted a complaint to Farr regarding VDOC's noncompliance with document production. (Compl. ¶ 126.)

On October 17, 2008, Robinson issued his written decision on Keck's grievance, denying Keck's request for adverse inferences due to VDOC's noncompliance with document production and upholding the disciplinary action taken against Keck. (Compl. ¶ 129.) On October 31, 2008,

---

[3] Keck's Complaint fails to provide any further information on the substance of DEDR's ruling.

Keck requested that Robinson reconsider the decision, and on November 5, 2008, Robinson denied the request for reconsideration. (Compl. ¶¶ 130-131.)

On November 12, 2008, Keck appealed Robinson's decision to DEDR, contending that the "decision did not comply with the grievance procedure." (Compl. ¶ 132.) That same day, Keck appealed Robinson's decision to Virginia's Department of Human Resource Management ("DHRM"), contending that the "decision was inconsistent with state and/or agency policy." (Compl. ¶ 133.) From December 2008 through March 2009, Keck provided monthly notifications to Farr and Sarah R. Wilson, Director of DHRM, that DEDR and DHRM had failed to comply "with mandated appeal decision timelines." (Compl. ¶ 136; *see also* ¶¶ 32, 137, 138, 142.)

On February 6, 2009, Ernest G. Spratley, Assistant Director of DHRM, informed Keck "that 'no decision [would] be issued by DHRM until all other decisions ha[d] been settled.'" (Compl. ¶ 139; *see also* ¶ 33.) On March 8, 2009, Keck challenged Spratley's interpretation of policy, and the next day, Spratley informed Keck that any challenge to his interpretation of policy should be submitted to DEDR through a separate grievance. (Compl. ¶¶ 140-141.)

On March 13, 2009, DEDR issued a ruling on Keck's appeal, remanding certain issues for reconsideration but failing to address VDOC's noncompliance with document production. (Compl. ¶ 143.) On March 23, 2009, Robinson held a teleconference with the parties to discuss the issues on remand and a schedule for supplemental briefing. (Compl. ¶ 145.) The next day, Keck petitioned DEDR "for clarification of several points within the Remanded decision" and again complained about VDOC's noncompliance with requested document production. (Compl. ¶ 146.)

On June 12, 2009, DHRM, at Robinson's request, ruled on a single issue raised in Keck's appeal, but did not rule on the remaining issues raised on appeal.[4]  (Compl. ¶ 149.)  On June 25, 2009, Keck petitioned DHRM for clarification on its ruling.  (Compl. ¶ 152.)  On July 2, 2009, Spratley informed Keck that DHRM would not rule on the remaining issues on appeal "until all other appeals from all other decision makers ha[d] been settled."  (Compl. ¶ 153.)  Spratley again reiterated this policy in November 2009.  (Compl. ¶ 164.)

On July 15, 2009, Robinson issued a schedule for supplemental briefing and his final decision.  (Compl. ¶ 155.)  Keck submitted supplemental briefing on July 31, 2009, and VDOC failed to submit additional briefing.  (Compl. ¶¶ 157, 158, 160.)  From October 2009 through January 2010, Keck notified Robinson monthly that he was "out of compliance . . with mandated decision timelines."  (Compl. ¶¶ 161, 163, 165; *see also* ¶ 166.)  On January 18, 2010, Robinson issued his decision on the remanded issues, again upholding the disciplinary actions taken against Keck.  (Compl. ¶ 167.)  On February 2, 2010, Keck requested that Robinson reconsider his decision, and on February 4, 2010, Robinson denied Keck's request for reconsideration.  (Compl. ¶¶ 168, 171.)

On February 2, 2010, Keck appealed Robinson's decision to DEDR, again contending that the decision "did not comply with the grievance procedure."  (Compl. ¶ 169.)  That same day, Keck appealed Robinson's decision to DHRM, again contending that the decision "was inconsistent with state and/or agency policy."  (Compl. ¶ 170.)  On February 23, 2010, DEDR issued its ruling on Keck's appeal, upholding Robinson's "decisions as fully and completely

---

[4]  Keck's Complaint fails to provide any further information on the substance of DHRM's ruling.

compliant with the Procedure." (Compl. ¶ 172.) On March 29, 2010, DHRM issued its decision

on Keck's appeals, also upholding Robinson's decisions. (Compl. ¶ 173.)

**G.     The "Screening Out" of Keck's Applications for VDOC Positions**

On September 8, 2008, October 13, 2008, and November 21, 2008, VDOC "screened

out" Keck's applications for promotional opportunities within VDOC. (Compl. ¶¶ 119, 128,

134.)

On December 4, 2008, Thornton notified Keck that his applications were screened out

"due to 'active disciplinary notices on [his] record'" and stated that he "'would not be eligible for

any transfer, lateral, promotional or other opportunities while there were active disciplinary

notices.'" (Compl. ¶ 128; *see* ¶ 135.) Thornton indicated that this screening out was standard

practice. (Compl. ¶ 128.) Keck contends that policy cannot support this practice. (*See, e.g.*,

Compl. ¶¶ 128, 134.)

Keck submitted other applications for promotional opportunities which were also

screened out on June 19, 2009, July 6, 2009, and August 27, 2009, and March 9, 2010. (Compl.

¶¶ 151, 154, 159, 538.)

**II.  Procedural History**

On August 6, 2010, Keck filed a Complaint in this Court, naming as Defendants the

Commonwealth of Virginia, Johnson, Rogers, Taylor,[5] Hulbert, VDOC's Deputy Director of

Human Resources Paul Broughton (Compl. ¶ 14), Nick Broughton, Washington, Brame,

Pearson, Estep, Braen, Moore, Anderson, Thornton, Smith, Hardwick, Werby, Bircham, Durham,

---

[5]  Keck never served Taylor with the Complaint.

13

Farr, Robinson, Wilson, and Spratley.  Keck sues the named Defendants in their individual and

official capacities.  (Compl. ¶¶ 13-37.)

Keck asserts twelve counts against Defendants.  The Court restates Keck's claims as

follows:

Count 1:    Defendants Nick Broughton, Moore, Hulbert, Braen, Pearson, Smith, Taylor,
            Hardwick, Werby, Bircham, and Durham violated Keck's Fourth Amendment[6]
            rights by invading his privacy and engaging in an illegal search and seizure, in
            violation of 42 U.S.C. § 1983;[7]

Count 2:    Defendants Hulbert, Braen, Nick Broughton, Moore, Taylor, Hardwick, Werby,
            Bircham, and Durham intentionally and knowingly ordered, disclosed, and/or
            received Keck's protected electronic communications without lawful authority or
            consent, in violation of the Stored Communications Act;[8]

Count 3:    Defendants Hulbert, Braen, Nick Broughton, Moore, Smith, Taylor, Hardwick,
            Werby, Bircham, and Durham conspired to invade Keck's privacy and to perform
            an illegal search and seizure of Keck's computer account for the purpose of

---

[6] The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures, shall not be violated, and no Warrants
shall issue, but upon probable cause, supported by Oath or affirmation, and
particularly describing the place to be searched, and the persons or things to be
seized.

U.S. Const. amend. IV.

[7] 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party injured in an action
at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[8] 18 U.S.C. § 2701 *et seq.*

14

gaining leverage and information to be used later against Keck to deprive him of his property interests in continued employment, in violation of 42 U.S.C. § 1985;[9]

Count 4:     Defendants Nick Broughton, Werby, Hulbert, Braen, and Robinson violated Keck's First Amendment rights to free speech by disciplining him based on his personal opinions contained in illegally seized documents, in violation of 42 U.S.C. § 1983;

Count 5:     Defendants Johnson, Rogers, Washington, Hulbert, Braen, and Brame retaliated against Keck after he assisted his subordinate employee in filing a grievance alleging discrimination, in violation of Title VII[10] of the Civil Rights Act;

Count 6:     Defendants Rogers, Washington, Pearson, Smith, Estep, Hulbert, Braen, Paul Broughton, and Thornton discriminated against Keck by imposing adverse employment actions and by screening out his employment applications, in violation of Title VII of the Civil Rights Act;

Count 7:     Defendants Commonwealth of Virginia, Johnson, Rogers, Hulbert, Braen, Farr, Wilson, Spratley, and Robinson deprived Keck of his Fourteenth Amendment right to procedural and substantive due process,[11] in violation of 42 U.S.C. § 1983;

Count 8:     Defendants Nick Broughton, Moore, Werby, Hardwick, Hulbert, Braen, Smith, and Robinson deprived Keck of his Sixth Amendment right to confrontation,[12] in violation of 42 U.S.C. § 1983;

---

[9] 42 U.S.C. § 1985(3) states, in relevant part:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

[10] 42 U.S.C. § 2000e *et seq.*

[11] "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

[12] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

Count 9:        Defendants Johnson, Paul Broughton, Thornton, Hulbert, and Braen tortiously interfered with Keck's ability to improve his employment circumstances by screening out his employment applications;

Count 10:       Defendants Nick Broughton, Moore, Taylor, Werby, Hardwick, Bircham, Durham, Hulbert, Braen, Farr, and Robinson were negligent and/or grossly negligent in investigating, prosecuting, and disciplining Keck and allowing the injuries sustained by Keck to continue unabated;

Count 11:       Defendants Commonwealth of Virginia, Johnson, Rogers, Washington, Pearson, Hulbert, Braen, Paul Broughton, Brame, Thornton, Anderson, Nick Broughton, Farr, Robinson, Wilson, and Spratley negligently failed to train, monitor, and supervise the actions of their agents; and,

Count 12:       Defendants Rogers, Washington, Hulbert, Braen, Brame, Farr, Wilson, Spratley, and Robinson engaged in abuse of process by twice disciplining Keck based on the same cause of action.

(*See* Compl. ¶¶ 199-612.) Keck seeks injunctive relief, declaratory relief, and damages. (Compl.

at 110-111.)

On November 4 and 5, 2010, Defendants filed their motions to dismiss,[13] raising various

grounds for dismissal of Keck's claims. The Court addresses Defendants' arguments below.[14]

_____

[13] Defendants have filed motions to dismiss in three groups: (1) State Defendants, consisting of the Commonwealth of Virginia, Johnson, Rogers, Hulbert, Paul Broughton, Nick Broughton, Washington, Brame, Pearson, Braen, Moore, Anderson, Thornton, Smith, Werby, Farr, Robinson, Wilson, and Spratley; (2) NG Defendants, consisting of Hardwick, Burcham, and Durham; and, (3) Estep.
      Defendants' motions to dismiss included proper *Roseboro* notices. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[14] The Court does not reach some of Defendants' arguments because dismissal of Keck's claims is appropriate on other grounds. The Court also declines to consider State Defendants' *Younger* abstention argument. (*See* State Defs.' Mem. Supp. Mot. Dismiss 13-18.) While Keck's Complaint states that his appeal of the grievance proceeding to a Virginia circuit court is "pendant at the time of filing" (Compl. ¶ 8), Keck's proposed Amended Complaint states that the circuit court's "decision was entered 1/11/2011" (Pl.'s Mem. Supp. Mot. Leave File Am. Compl. Ex. 1, ¶ 7). Based on this proposed amendment, it is unclear whether *Younger* abstention would apply.

### III.  Standard of Review

A.       **Rule 12(b)(1):  Lack of Subject Matter Jurisdiction**

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the

Court's subject matter jurisdiction, the burden rests with the plaintiff, the party asserting

jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va.*

*Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (*citing McNutt v. Gen. Motors*

*Acceptance Corp.*, 298 U.S. 178, 189 (1936);  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.

1982)).

A motion to dismiss pursuant to Rule 12(b)(1) can attack subject matter jurisdiction in

two ways. First, a 12(b)(1) motion may attack the complaint on its face, asserting that the

complaint fails to state a claim upon which subject matter jurisdiction can lie.  *See Int'l*

*Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.  In such a

challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally

affording the plaintiff the same procedural protection he or she would receive under Rule

12(b)(6) consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*,

697 F.2d at 1219.

However, a 12(b)(1) motion may also, as here, challenge the existence of subject matter

jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R.*

*Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F.

Supp. at 1338; *see also Adams*, 697 F.2d at 1219.  In such a challenge, no presumptive

truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will

17

not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

If the facts necessary to determine jurisdiction are intertwined with the facts central to the merits of the dispute, the proper course of action is for the court to find that jurisdiction exists and then to resolve the factual dispute on the merits unless the claim is made solely for the purpose of obtaining jurisdiction, or is determined to be wholly insubstantial and frivolous. *Adams*, 697 F.2d at 1219; *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

### B.    Rule 12(b)(6): Failure to State a Claim

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

18

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (omission in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions"

or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555

(citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above

the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at

570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Bell Atl. Corp.*, 550 U.S. at

556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a

claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim."

*Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v.

Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281

(4th Cir. 2002)).

     "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency

of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal

nevertheless is appropriate when the face of the complaint clearly reveals the existence of a

meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir.

1996). Thus, a Rule 12(b)(6) motion may seek dismissal based on an applicable statute of

limitations in certain circumstances.

## IV. Analysis

### A.   Count 1:  § 1983 Claim for Invasion of Privacy and Illegal Search and Seizure

In Count 1, Keck contends that Defendants Nick Broughton, Moore, Hulbert, Braen, Pearson, Smith, Taylor, Hardwick, Werby, Bircham, and Durham invaded his reasonable expectation of privacy and conducted an unauthorized and illegal search and seizure of his property. (Compl. ¶ 316.) Keck bases this claim on the two investigations of his computer account, the first occurring from July to October 2007, and the second occurring from January through October 2008. (Compl. ¶¶ 202-239, 328.) Keck also bases this claim on the February 2008 search and seizure of the belongings in his office. (Compl. ¶ 228.)

State Defendants and NG Defendants contend that the applicable statute of limitations bars Count 1 and that Count 1 should be dismissed for failure to state a claim. (State Defs.' Mem. Supp. Mot. Dismiss 32-34, 54-68; NG Defs.' Mem. Supp. Mot. Dismiss 6-8, 10-11.)

### 1.   Statute of Limitations

Because § 1983 does not explicitly provide its own statute of limitations, the courts borrow the personal injury statute of limitations from the relevant state. *See Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995); *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 476 (E.D. Va. 1999). Virginia applies a two-year statute of limitations to personal injury claims. Va. Code § 8.01-243(A) ("[E]very action for personal injuries, whatever the theory of recovery, . . . shall be brought within two years after the cause of action accrues."). Keck thus must have brought his § 1983 claim within two years from when the claim accrued. "'A claim accrues when the plaintiff becomes aware of his or her injury, *United States v.*

20

*Kubrick*, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." *Almond v. Sisk*, No. 3:08cv138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (*quoting Nasim*, 64 F.3d at 955) (omission in original).

To the extent Keck bases Count 1 on the first investigation of his computer account and on the search and seizure of his office materials, Keck's § 1983 claim accrued in October 2007 and February 2008 respectively. (*See* Compl. ¶¶ 212, 225.) Because Keck did not file his Complaint until August 6, 2010, more than two years after his claim accrued, the statute of limitations bars this portion of Count 1. Accordingly, the Court RECOMMENDS that Count 1 be DISMISSED as barred by the statute of limitations to the extent it is based on the first investigation of Keck's computer account and the search and seizure of Keck's office materials.[15]

### 2.      Failure to State a Claim

The Court assumes, without deciding, that the statute of limitations does not bar the second investigation of Keck's computer account, which occurred from January through October 2008. Regardless, to the extent Keck bases Count 1 on this second investigation of his computer account, he fails to state a claim upon which relief may be granted.

Section 1983 provides a private right of action for deprivation of constitutional rights by persons acting under the color of law.

> Section 1983, therefore, "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Hence, to establish liability under Section 1983, a plaintiff must show that the defendant[s],

---

[15] Keck argues that the applicable statutes of limitations for his claims should be tolled during the pendency of his administrative grievance proceedings and his state court proceedings. (Pl.'s Resp. Defs.' Mots. Dismiss 14-15.) The Court has reviewed the cases cited by Keck in support of his argument and disagrees that they provide a basis to toll the applicable statutes of limitations as applied to his claims.

acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.

*Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) (*quoting Westmoreland v. Brown*, 883 F. Supp. 67, 71 (E.D. Va. 1995)) (internal citations omitted). Keck's § 1983 claim in Count 1 arises from an alleged violation of his Fourth Amendment rights, and Keck must sufficiently allege such violation to survive a motion to dismiss under Rule 12(b)(6).

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by government agents, including government employers or supervisors.'" *United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000) (*citing O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (plurality opinion); *id.* at 730-31 (Scalia, J., concurring in the judgment)). To state a § 1983 claim for a Fourth Amendment violation, Keck must first allege facts sufficient to demonstrate "a legitimate expectation of privacy in the place searched or the item seized." *Id.* In other words, Keck must allege facts sufficient to demonstrate "that his subjective expectation of privacy is one that society is prepared to accept as objectively reasonable." *Id.* (*citing California v. Greenwood*, 486 U.S. 35, 39 (1988)); *see also Doe v. Broderick*, 225 F.3d 440, 450 (4th Cir. 2000). While government employees may have a legitimate expectation of privacy in their offices or parts of their offices, "office practices, procedures, or regulations may reduce legitimate privacy expectations." *Simons*, 206 F.3d at 398 (*citing O'Connor*, 480 U.S. at 717; *id.* at 737 (Blackmun, J., dissenting)).

Here, Keck challenges VDOC's search and seizure of materials contained on his work computer account, including the search of hidden folders. Keck alleges that he did not share "his personal computer account, folder, files, data or email account with other employees." (Compl.

22

¶ 276).[16] Keck's allegations, however, acknowledge that his work computer's Logon Banner stated that "'*[t]here is no expectation of privacy . . . monitoring **may** occur.*'" (Compl. ¶ 296 (omission in original).) Keck nonetheless contends that any monitoring by VDOC was infrequent at best (Compl. ¶ 297), and that, by signing into the system, he merely consented to monitoring and searches that "compl[ied] fully with the government's own policies and . . . comport[ed] strictly with the limitations of the law" (Compl. ¶ 302).[17]

Taking the well-pleaded allegations as true and viewing the Complaint in the light most favorable to Keck, *Mylan Labs., Inc.*, 7 F.3d at 1134, the Court finds that Keck's Complaint fails to allege facts sufficient to demonstrate a legitimate expectation of privacy. Although Keck contends he did not share the documents on his computer with other employees, his Complaint acknowledges that the Logon Banner explicitly stated there was no expectation of privacy and that monitoring could occur. Keck's allegations further admit that VDOC monitoring has occurred, even if infrequently. Thus, Keck's allegations actually negate a showing of a legitimate expectation of privacy in his work computer. *See Simons*, 206 F.3d at 398 (finding no legitimate expectation of privacy in files downloaded from Internet in light of government agency's Internet policy which placed employees on notice that Internet activity would be monitored); *United States v. Mosby*, No. 3:08cr127, 2008 WL 2961316, at *5 (E.D. Va. July 25, 2008) (finding no legitimate expectation of privacy in work computer where warning banner on

---

[16] The Court notes, however, that Keck also alleges that VDOC searched and seized materials in his "shared drive." (*See, e.g.*, Compl. ¶¶ 53, 71, 72, 81.)

[17] Other allegations regarding Keck's legitimate expectation of privacy are no more than conclusions and are thus not entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1950; (*see, e.g.*, Compl. ¶¶ 243, 244, 274, 298, 304).

computer clearly informed the employee that he had no expectation of privacy and that monitoring of the computer system may occur).

Further, although Keck contends that, by signing into VDOC's system, he consented to limited searches and monitoring by VDOC but did not consent to the type of search challenged in his Complaint, this allegation merely goes to Keck's subjective state of mind. Even if Keck has sufficiently alleged a subjective belief in the privacy of his work computer, he has failed to allege facts sufficient to demonstrate that such belief was objectively reasonable. *See Simons*, 206 F.3d at 398.

Keck's Complaint thus fails to sufficiently allege a § 1983 claim for a Fourth Amendment violation based on the second investigation of his computer account. Accordingly, the Court RECOMMENDS that Count 1 be DISMISSED.

**B.   Count 2: Violation of the Stored Communications Act**

In Count 2, Keck contends that Defendants Hulbert, Braen, Nick Broughton, Moore, Taylor, Hardwick, Werby, Bircham, and Durham intentionally and knowingly ordered, disclosed, and/or received Keck's protected electronic communications without lawful authority or consent, in violation of the Stored Communications Act ("SCA"). State Defendants and NG Defendants contend that the applicable statute of limitations bars Count 2. (State Defs.' Mem. Supp. Mot. Dismiss 34; NG Defs.' Mem. Supp. Mot. Dismiss 8-9.)

Section 2701 of the SCA creates a criminal offense for whoever "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility," and by doing so "obtains, alters, or prevents authorized access to a wire or electronic communication while it is in

electronic storage in such system." 18 U.S.C. § 2701(a). Such conduct is not a criminal offense,

however, if authorized "by the person or entity providing a wire or electronic communications

service." *Id.* § 2701(c). Section 2703 of the SCA governs a governmental entity's access to the

contents of an electronic communication stored by third party service providers. *Id.* § 2703; *In re*

*Application of U.S. for an Order Authorizing Installation & Use of a Pen Register*, 402 F. Supp.

2d 597, 600 (D. Md. 2005). The SCA creates a private cause of action for any person aggrieved

by a violation of §§ 2701 or 2703. *Id.* § 2707(a). However, "[a] civil action under this section

may not be commenced later than two years after the date upon which the claimant *first*

*discovered or had a reasonable opportunity to discover* the violation." *Id.* § 2707(f) (emphasis

added).

    Even assuming, without deciding, that Keck properly alleges a violation of the SCA,[18]

the Court finds that his claim is barred by the applicable statute of limitations. Keck bases his

claim under the SCA on the two investigations of his computer account, including his electronic

communications. (Compl. ¶¶ 333-339.) As discussed above, Keck alleges that the first

investigation occurred between July and October 2007 and that he was notified about this

investigation in October 2007. Keck alleges that the second investigation began between January

and February 2008 and concluded in October 2008 and that he was aware of the second

---

    [18] As discussed above, the SCA prohibits unauthorized access to the contents of an
electronic communication stored by third party service providers. Keck's Complaint fails to
include allegations regarding a third party service provider and instead appears to allege that
VDOC accessed electronic storage in its own system. Courts have held this insufficient to state a
claim under the SCA. *See, e.g., United States v. Councilman*, 418 F.3d 67, 81 (1st Cir. 2005);
*Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 115 (3d Cir. 2003); *Cornerstone Consultants,
Inc. v. Prod. Input Solutions, L.L.C.*, No. C10-3072-MWB, 2011 WL 1899372, at *10 (N.D.
Iowa May 19, 2011).

25

investigation and began making daily protests against it in February 2008. (Compl. ¶¶ 73, 75, 76, 79.) Thus, the statute of limitations under the SCA began to run in October 2007 for the first investigation and in February 2008 for the second investigation. Because Keck did not file his Complaint until August 6, 2010, more than two years after his claim accrued, the statute of limitations bars Count 2. Accordingly, the Court RECOMMENDS that Count 2 be DISMISSED as barred by the applicable statute of limitations.

**C.      Count 3: § 1985 Conspiracy**

In Count 3, Keck alleges that Defendants Hulbert, Braen, Nick Broughton, Moore, Smith, Taylor, Hardwick, Werby, Bircham, and Durham conspired to invade his privacy and to perform an illegal search and seizure of Keck's computer account for the purpose of gaining leverage and information to be used later against Keck to deprive him of his property interests in continued employment, in violation of 42 U.S.C. § 1985. This count again challenges the two investigations of Keck's computer account. (Compl. ¶¶ 361-390.) State Defendants and NG Defendants contend that Keck's Complaint fails to state a claim for relief under § 1985. (State Defs.' Mem. Supp. Mot. Dismiss 74-76; NG Defs.' Mem. Supp. Mot. Dismiss 12-14.)

When a plaintiff asserts a claim of conspiracy to violate civil rights under 42 U.S.C. § 1983(5), he or she must meet a high threshold to establish a prima facie case. *Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995). To state a claim for conspiracy to interfere with civil rights pursuant to § 1985(3), a plaintiff must establish the following elements:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

26

*Simmons v. Poe*, 47 F.3d 1370, 1376-77 (4th Cir. 1995) (*citing Buschi v. Kirven*, 775 F.2d 1240,

1257 (4th Cir. 1985)). Importantly, a § 1985 conspiracy claim requires that the plaintiff show a

"'meeting of the minds'" among conspirators. *A Society Without a Name v. Virginia*, No. 10-

1437, 2011 WL 3690000, at \*3 (4th Cir. Aug. 24, 2011) (*quoting Simmons*, 47 F.3d at 1377).

The United States Court of Appeals for the Fourth Circuit requires courts to look closely as to

whether "a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy."

*Simmons*, 47 F.3d at 1377. Indeed, "'[the Fourth Circuit has] specifically rejected section 1985

claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the

absence of concrete supporting facts.'" *A Society Without a Name*, 2011 WL 3690000, at \*3

(*quoting Simmons*, 47 F.3d at 1377).

Despite the length of the Complaint before the Court, Keck's conspiracy claim must fail

because it is comprised of conclusory allegations unsupported by concrete facts. *Id.* First,

Keck's allegations do not sufficiently establish a meeting of the minds. Keck merely contends

that "at some point prior to July 24, 2007, the decision was made by an as yet unknown person(s)

to search through [Keck's] computer account, looking for any evidence of misfeasance that could

be used as leverage later." (Compl. ¶ 349.) Such "a conclusory allegation of agreement at some

unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557.

The Complaint further alleges that Defendants engaged in a "common design . . . by mutual

agreement" (Compl. ¶ 347), that their actions were "prearranged and mutually agreed upon"

(Compl. ¶ 353), and that a "tacit agreement between two or more parties" existed (Compl. ¶ 369).

However, these contentions amount to no more than legal conclusions which fail to assert a

plausible conspiracy claim. *Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009) (finding the plaintiff's § 1985 conspiracy claim merely a legal conclusion unsupported by factual allegations). "These bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim. . . . As such, the allegations are conclusory and not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951 (*quoting Twombly*, 550 U.S. at 554-55)).

Second, Keck's Complaint is devoid of any allegations that the conspiracy was motivated by a specific class-based, invidiously discriminatory animus. The Court thus RECOMMENDS that Count 3 be DISMISSED for failure to state a claim.[19]

### D.   Count 4: § 1983 Claim for Deprivation of Keck's Right to Free Speech

In Count 4, Keck contends that Defendants Nick Broughton, Werby, Hulbert, Braen, and Robinson violated Keck's First Amendment rights to free speech by disciplining him based on his personal opinions contained in illegally seized documents. Keck contends that the materials seized from his computer account contained personal opinions and thoughts protected by the First Amendment (Compl. ¶¶ 419-421), and that Defendants violated the First Amendment by disciplining him in February 2008 "on the basis of the protected materials" (Compl. ¶ 419; *see*

---

[19] Keck's proposed Amended Complaint seeks to add numerous paragraphs under Count 3. (*See, e.g.*, Pl.'s Mem. Supp. Mot. Leave File Am. Compl. Ex. 1, ¶¶ 351, 355-381.) Even with these additions, Keck's proposed Amended Complaint would fail to state a claim under § 1985. Keck's proposed Amended Complaint alleges that a conspiracy should be inferred because Defendants engaged in an unauthorized and illegal search of Keck's computer without questioning each other's actions. (Pl.'s Mem. Supp. Mot. Leave File Am. Compl. Ex. 1, ¶¶ 355-381.) The proposed Amended Complaint still consists of conclusory allegations and legal conclusions unsupported by concrete facts and fails to include any allegations regarding a specific class-based, invidiously discriminatory animus. Allowing amendment would thus be futile.

*also* ¶ 394). State Defendants contend that the applicable statute of limitations bars this claim. (State Defs.' Mem. Supp. Mot. Dismiss 36.)

As discussed above, a two-year statute of limitations applies to Keck's § 1983 claims, and his § 1983 claims accrued either when he became aware of his injury or when he was put on notice to make a reasonable inquiry as to whether a claim exists. Keck's § 1983 claim in Count 4 accrued in February 2008 when he received discipline. Because Keck did not file his Complaint until August 6, 2010, more than two years after his claim accrued, the statute of limitations bars Count 4. Accordingly, the Court RECOMMENDS that Count 4 be DISMISSED as barred by the statute of limitations.

E.    **Counts 5 and 6:  Title VII Claims**[20]

In Count 5, Keck contends that Defendants Johnson, Rogers, Washington, Hulbert, Braen, and Brame retaliated against him after he engaged in protected activity. Keck alleges that he engaged in protected activity on January 24, 2008 by assisting his subordinate employee in filing a grievance alleging discrimination and improper hiring practices. (Compl. ¶¶ 55, 430, 433, 436.) Keck contends Defendants retaliated against him by imposing disciplinary actions on February 12, 2008. (Compl. ¶¶ 430, 434, 436.) Any retaliation claim in Count 5 would flow to some degree from Keck's EEOC charge.

However, Keck also appears to allege retaliation in the form of a hostile work environment. (Compl. ¶ 437.) The Court notes that a hostile work environment does not serve as a substitute for adverse employment actions in a retaliation claim. The Court will thus

_____

[20] While Keck's Complaint mentions 42 U.S.C. § 1981 once in the introduction section, Counts 5 and 6 appear to arise under Title VII and not § 1981. (*See* Compl. ¶¶ 1, 428-483.) In his response to Defendants' motions to dismiss, Keck concedes that he brings no claims under § 1981. (Pl.'s Resp. Defs.' Mots. Dismiss 17.)

liberally construe Count 5 also to assert a free-standing claim for hostile work environment based on the disciplinary actions taken against Keck, the denial of access to his computer account, and Defendants' failure to respond to Keck's requests for documents during the grievance proceedings. (Compl. ¶ 438.)

In Count 6, Keck contends that Defendants Rogers, Washington, Pearson, Smith, Estep, Hulbert, Braen, Paul Broughton, and Thornton discriminated against him by disciplining him and by screening out his employment applications. Keck alleges disparate treatment and impact in the manner in which Defendants disciplined him and in Defendants' policy of screening out employment applications of employees with active disciplinary notices.[21] (Compl. ¶¶ 443-446, 457-460, 477.)

Defendants argue that Keck failed to allege hostile work environment, discrimination, disparate treatment, or disparate impact in his EEOC charge and thus did not properly present his claims to the EEOC. This failure to exhaust administrative remedies, Defendants contend, deprives the Court of subject matter jurisdiction over these claims. (State Defs.' Mem. Supp. Mot. Dismiss 82-83, 88; Def. Estep's Mem. Supp. Mot. Dismiss 5-8.) Defendants also contend that Counts 5 and 6 fail to state a claim. (State Defs.' Mem. Supp. Mot. Dismiss 81-92; Def. Estep's Mem. Supp. Mot. Dismiss 8-12.)

### 1.    Exhaustion of Administrative Remedies and Subject Matter Jurisdiction

"Before filing suit under Title VII, a plaintiff must exhaust [his or] her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). If the plaintiff has failed to exhaust administrative remedies concerning a

---

[21]    Keck's Complaint fails to state whether the alleged discrimination was based on his race, color, religion, sex, or national origin.

Title VII claim, the court is deprived of subject matter jurisdiction over the claim. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). The purpose behind the exhaustion requirement is to ensure that the employer is put on notice of the alleged violations in hopes that the matter can be resolved out of court if possible. *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

The EEOC charge, which "must be in writing and verified under oath or affirmation under penalty of perjury," defines the scope of the plaintiff's right to sue. *Jones*, 551 F.3d at 300. "If a plaintiff's claims in [his or] her judicial complaint are reasonably related to [his or] her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in [his or] her subsequent civil suit." *Smith*, 202 F.3d at 247. "[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). "[I]f the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred." *Id.* In addition, courts bar claims that allege discrimination on a different basis, of a different type, or of a different scope than the plaintiff alleged in the administrative charge. *Id.* "At the same time, however, lawyers do not typically complete the administrative charges, and so courts construe them liberally." *Id.*

Here, the Court cannot find that Keck exhausted his administrative remedies regarding any hostile work environment claim in Count 5 or his discrimination, disparate treatment, and disparate impact claims in Count 6. First, these claims are not alleged in the Charge of Discrimination, which asserted only retaliation, and, based on the record before the Court, cannot be deemed reasonably related to any allegations in the Charge of Discrimination. *See id.* ("A

31

claim will also typically be barred if the administrative charge alleges one type of discrimination–such as discriminatory failure to promote–and the claim encompasses another type–such as discrimination in pay and benefits."). Second, these claims cannot be expected to follow from a reasonable administrative investigation of the Charge of Discrimination.

Because Keck failed to exhaust his administrative remedies, the Court lacks subject matter jurisdiction over any hostile work environment claim in Count 5 and Keck's discrimination, disparate treatment, and disparate impact claims in Count 6. The Court thus RECOMMENDS that these claims be DISMISSED for lack of subject matter jurisdiction.

### 2.      **Failure to State a Claim**

In addition, the core of Keck's claim in Count 5, the Title VII retaliation claim, must be dismissed for failure to state a claim upon which relief may be granted. Under Title VII, it is "an unlawful employment practice for an employer . . . to . . . discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." *Id.* § 2000e(b). The Fourth Circuit has held that the inclusion of the term "agent" does not impose liability on individual employees and instead establishes a limit on an employer's liability. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). Thus, by its terms and as interpreted by the Fourth Circuit, Title VII applies only to "employers." *Id.*; *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 708-09 (E.D. Va. 2004).

In his Complaint, Keck alleges that he is a full-time employee of VDOC. (Compl. ¶ 11.) Nevertheless, Keck asserts Count 5 against Defendants Johnson, Rogers, Washington, Hulbert, Braen, and Brame. Because a Title VII claim cannot lie against individual employees, Keck fails

to state a claim in Count 5. *See, e.g., Achel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities."); *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002); *Lissau*, 159 F.3d at 180 (concluding "that supervisors are not liable in their individual capacities for Title VII violations); *Jones*, 378 F. Supp. 2d at 708 (stating that the plaintiff must assert her Title VII claim against her employer and not against the supervisor whom she claimed sexually harassed her); *Johnson v. Quin Rivers Agency for Cmty. Action, Inc.*, 128 F. Supp. 2d 332, 335 (E.D. Va. 2001) ("Only employers are liable for illegal acts of employment discrimination against employees under Title VII . . . ."). The Court thus RECOMMENDS that Count 5 be DISMISSED for failure to state a claim.

**F.      Count 7: § 1983 Claim for Deprivation of Procedural and Substantive Due Process**

In Count 7, Keck contends that Defendants Commonwealth of Virginia, Johnson, Rogers, Hulbert, Braen, Farr, Wilson, Spratley, and Robinson deprived Keck of procedural and substantive due process rights, in violation of 42 U.S.C. § 1983. Keck alleges that Defendants failed to provide adequate pre-deprivation remedies before taking disciplinary action, imposed excessive and arbitrary disciplinary actions, and failed to provide post-deprivation remedies by failing to adhere to procedural deadlines and by upholding unlawful and illegitimate actions. (Compl. ¶¶ 487-493.) Keck contends that these failures deprived him of his property interest in continued state employment. (Compl. ¶¶ 487, 489.) State Defendants contend that Count 7 fails to state a claim. (State Defs.' Mem. Supp. Mot. Dismiss 93-101.)

**1.      Keck's Procedural Due Process Claim**

In order to establish a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege that he or she was deprived of a property or liberty interest secured by the

Constitution. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *Tri-County Paving, Inc. v. Ashe Cnty*, 281 F.3d 430, 436 (4th Cir. 2002). A viable procedural due process claim contains two elements. First, an identifiable, constitutionally protected property interest must exist. *Roth*, 408 U.S. at 577. Because the Constitution does not enumerate such interests, a protected property interest is "created and . . . defined by existing rules or understandings that stem from an independent source such as state law." *Id.* Second, if a protected property interest exists, "the State [may] not deprive [her or him] of this property without due process." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *see also Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011). Courts determine whether process sufficiently satisfies the Constitution based on federal law. *Laudermill*, 470 U.S. at 541.

Here, Keck's Complaint fails to sufficiently allege a protected property interest. Keck claims that Defendants deprived him of procedural due process rights by demoting him, reducing his salary, and reassigning him. His Complaint, however, fails to include any allegations regarding state laws, rules, or understandings that would plausibly create a protected property interest in his specific job title, placement, and salary. *See Roth*, 408 U.S. at 577 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). Keck's Complaint fails to plausibly allege a legitimate claim of entitlement to his specific job title, placement, and salary.

Even if Keck's Complaint did sufficiently allege a protected property interest, he fails to state a claim for a procedural due process deprivation. Viewing the well-pleaded allegations in his Complaint as true and in the light most favorable to Keck, Keck received ample process that more than satisfied Constitutional requirements. A deprivation generally must "'be preceded by

34

notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (*quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). "'[T]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.'" *Id.* at 545 (*quoting Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)). Here, the alleged deprivation is less severe than that of a terminated employee. Therefore, due process requires proceedings no more formal and extensive than those required for terminated employees. *See Garraghty v. Jordan*, 830 F.2d 1295, 1300 (4th Cir. 1987).

In October 2007, Moore notified Keck of the investigation, presented him with copies of the evidence obtained, and interviewed him. In January 2008, Hulbert warned Keck that she was considering possible disciplinary actions based on the investigation, Braen informed Keck that a due process meeting would be held, and a meeting was held with Keck present to discuss the results of the investigation and potential disciplinary actions. In February 2008, Keck attended a disciplinary meeting during which Group II written notices were issued and discipline was imposed. These pre-deprivation proceedings satisfied the Constitutional requirements of due process. *See Loudermill*, 470 U.S. at 545 (finding that "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" sufficiently satisfied due process prior to termination).[22]

In February 2008, Keck filed a grievance challenging the disciplinary actions. In September and October 2008, the hearing officer appointed to the grievance heard evidence over

---

[22] While Keck alleges that Brame, Smith, and Hulbert denied his request to bring a representative to the disciplinary meeting, this fails to sufficiently state a claim for a due process violation. Even when termination is the imposed discipline, the pre-deprivation hearing "need not be elaborate" and a full adversarial proceeding is not required. *Loudermill*, 470 U.S. at 545.

a two-day period and accepted briefing and supplemental briefing.  In October 2008, the hearing

officer issued a written decision upholding the disciplinary action taken against Keck.  Keck

sought reconsideration and appealed the decision to two different Virginia agencies.  In March

2009, DEDR issued a ruling on Keck's appeal, remanding certain issues for reconsideration.

After receiving supplemental briefing, the hearing officer issued his decision on the remanded

issues in January 2010, again upholding the disciplinary actions taken against Keck.  Keck again

sought reconsideration and appealed the decision to two different Virginia agencies.  In February

and March 2010, DEDR and DHRM upheld the hearing officer's decision.  Keck also appealed

the decision in a Virginia circuit court.  (Compl. ¶ 8.)  In light of this full post-deprivation

hearing, Keck's Complaint fails to sufficiently allege a deprivation of procedural due process.

*Laudermill*, 470 U.S. at 546.[23]

### 2.    Keck's Substantive Due Process Claim

In order to establish a substantive due process claim under the Fourteenth Amendment,

plaintiffs must sufficiently allege "(1) that they had property or a property interest; (2) that the

state deprived them of this property or property interest; and (3) that the state's action falls so far

beyond the outer limits of legitimate governmental action that *no process* could cure the

deficiency." *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 827 (4th Cir. 1995).  "The

protection of substantive due process is indeed narrow and covers only state action which is 'so

arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be

---

[23] Keck also alleges that Defendants failed to respond adequately to discovery requests and failed to adhere to procedural timelines for rendering decisions.  These factual contentions, however, merely allege violations of state law or procedure and do not implicate federal constitutional rights. *See Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990); *Weller v. Dep't of Soc. Servs. for Baltimore*, 901 F.2d 387, 392 (4th Cir. 1990) ("[I]t is well settled that violations of state law cannot provide the basis for a due process claim.").

literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'" *Id. (quoting Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991)).

As discussed above, Keck's Complaint fails to sufficiently allege a protected property interest. Keck's Complaint also fails to sufficiently allege a state action which "falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Id.* While Keck contends that his demotion, transfer, and pay reduction were mistaken and unfair, those allegations alone cannot plausibly undergird a substantive due process claim. *See Huang v. Bd. of Governors of the Univ. of N.C.*, 902 F.2d 1134, 1142 (4th Cir. 1990). Furthermore, Keck's allegations regarding the pre- and post-deprivation procedures addressing any purported illegal actions by VDOC belie the existence of a substantive due process claim based on Keck's demotion, transfer, and pay reduction. *See Sylvia*, 48 F.3d at 829.

Taking the well-pleaded allegations as true and viewing the Complaint in the light most favorable to Keck, his Complaint fails to sufficiently allege a plausible procedural or substantive due process claim. The Court thus RECOMMENDS that Count 7 be DISMISSED for failure to state a claim.

G.     **Count 8: § 1983 Claim for Deprivation of the Right of Confrontation**

In Count 8, Keck alleges that Defendants Nick Broughton, Moore, Werby, Hardwick, Hulbert, Braen, Smith, and Robinson deprived Keck of his Sixth Amendment right to confrontation. State Defendants and NG Defendants contend that Keck's Complaint fails to state a claim for relief. (State Defs.' Mem. Supp. Mot. Dismiss 102-103; NG Defs.' Mem. Supp. Mot. Dismiss 11-12.)

37

The text of the Sixth Amendment makes the right to confrontation applicable only to "all criminal prosecutions." U.S. Const. amend. VI. Keck's Complaint fails to allege a criminal prosecution. Instead, Keck's Complaint alleges a disciplinary proceeding based on an alleged violation of his employer's procedures, a subsequent grievance proceeding, and a resulting civil action challenging the results of the grievance proceeding. The Sixth Amendment right to confrontation does not apply to these types of proceedings.[24] *Austin v. United States*, 509 U.S. 602, 608 (1993) ("The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'"). The Court thus RECOMMENDS that Count 8 be DISMISSED for failure to state a claim.

### H.     Count 9: Tortious Interference

In Count 9, Keck asserts that Defendants Johnson, Paul Broughton, Thornton, Hulbert, and Braen tortiously interfered with Keck's ability to improve his employment circumstances by screening out his employment applications thereby preventing him from obtaining promotional opportunities and/or transferring to different VDOC facilities. State Defendants argue that Keck's Complaint fails to state a claim for tortious interference. (State Defs.' Mem. Supp. Mot. Dismiss 103-107.)

In Virginia, a plaintiff alleging tortious interference with contractual rights or business expectancies must establish four elements: "(i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the

---

[24] In Count 8, Keck sometimes appears to challenge the manner in which evidence was presented. Keck largely does so while also mentioning his right to confront reliable evidence. To the extent Keck seeks to raise, independently, an evidentiary challenge, he has utterly failed to allege any basis on which such an evidentiary claim could rest in the state administrative proceedings.

relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted." *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 670 S.E.2d 704, 706 (Va. 2009); *see also Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985).[25]

Keck's Complaint fails to sufficiently allege the existence of a valid contractual relationship or business expectancy in the VDOC positions for which he applied.  While Keck asserts he was well-qualified for these positions, his factual allegations fail to demonstrate contractual rights or business expectancies in these positions.  *See Commercial Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 897 (Va. 1997) (stating that "a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action" of tortious interference).  Thus, no factual allegations in Keck's Complaint "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Further, Keck asserts this claim against Defendants Johnson, Paul Broughton, Thornton, Hulbert, and Braen, alleging that these employees of VDOC were acting within the scope of their employment "at all times material to the allegations in th[e] Complaint." (Compl. ¶¶ 13, 14, 16, 28, 29).  Even assuming Keck's Complaint sufficiently alleged a contractual relationship or business expectancy in the VDOC positions for which he applied, these Defendants, as employees and agents of VDOC, "are not able as a matter of law to interfere with [VDOC's] contract. *Stronach v. Va. State Univ.*, 631 F. Supp. 2d 743, 753 (E.D. Va. 2008) (*citing Fox v. Deese*, 362 S.E.2d 699, 708 (1987)).  The Court thus RECOMMENDS that Count 9 be DISMISSED for failure to state a claim.

---

[25] To allege tortious interference with a contract terminable at will, in addition to the above-named elements, a plaintiff must also establish "that the defendant employed '*improper methods*'" of interference. *Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987) (*quoting Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985); *Restatement (Second) of Torts*, § 766 cmt. g (1979)).

I.    **Count 11:  Negligent Failure to Train, Monitor and Supervise**

In Count 11, Keck asserts that Defendants Commonwealth of Virginia, Johnson, Rogers, Washington, Pearson, Hulbert, Braen, Paul Broughton, Brame, Thornton, Anderson, Nick Broughton, Farr, Robinson, Wilson, and Spratley negligently failed to train, monitor, and supervise the actions of their agents.  State Defendants contend that Count 11 fails to state a claim upon which relief may be granted.  (State Defs.' Mem. Supp. Mot. Dismiss 113-16.)

The Supreme Court of Virginia has declined to "recognize[] a tort of negligent supervision of an employee by the employer and its managerial personnel." *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 365 S.E.2d 751, 751 (Va. 1988); *id.* at 754 ("[T]here is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances and we will not create one here."); *see also Johnson v. Enter. Leasing Co.*, No. 98-2573, 1999 WL 496879, at *1 (4th Cir. July 13, 1999) (noting that "claims of negligent supervision . . . are not cognizable under Virginia law").  Virginia courts likewise have declined to recognize a tort of negligent training.  *Morgan v. Wal-Mart Stores East, LP*, No. 3:10cv669, 2010 WL 4394096, at *4 (E.D. Va. Nov. 1, 2010).  Keck has thus failed to state a viable cause of action under Virginia law.  Accordingly, the Court RECOMMENDS that Count 11 be DISMISSED for failure to state a claim upon which relief may be granted.

J.    **Count 12:  Abuse of Process**

In Count 12, Keck contends that Defendants Rogers, Washington, Hulbert, Braen, Brame, Farr, Wilson, Spratley, and Robinson engaged in abuse of process by twice disciplining Keck based on the same cause of action.  Keck alleges that by "imposing 2 Group II Disciplinary Actions against [Keck] for a single cause of action in contradiction to law, policy and well known practice, [Defendants] have been allowed to impose extraordinary, improper and

40

disproportionate penalties." (Compl. ¶ 611.) State Defendants contend that the applicable statute of limitations bars this claim. (State Defs.' Mem. Supp. Mot. Dismiss 38.)

The two-year statute of limitations under Virginia Code § 8.01-248 applies to Keck's abuse of process claim. *See* Reviser's Note to Va. Code § 8.01-248 ("Section 8.01-248 is a catch-all provision for actions not otherwise covered by a statute of limitation; e.g., malicious prosecution and abuse of process."). A claim for abuse of process accrues "when the relevant criminal or civil action is terminated." Va. Code § 8.01-249(3). Here, Keck bases his abuse of process claim on the two Group II written notices issued at the February 12, 2008 disciplinary meeting. Keck's claim thus accrued at the close of the February 12, 2008 disciplinary meeting. Because Keck did not file his Complaint until August 6, 2010, the two-year statute of limitations bars Count 12. The Court thus RECOMMENDS that Count 9 be DISMISSED as barred by the applicable statute of limitations.

### K.    Count 10: Negligence and/or Gross Negligence

In Count 10, Keck alleges that Defendants Nick Broughton, Moore, Taylor, Werby, Hardwick, Bircham, Durham, Hulbert, Braen, Farr, and Robinson were negligent and/or grossly negligent in investigating, prosecuting, and disciplining Keck and allowing the injuries sustained by Keck to continue unabated.

State Defendants and NG Defendants argue that this claim should be dismissed as barred by the applicable statute of limitations and/or for failure to state a claim based on sovereign immunity. (State Defs.' Mem. Supp. Mot. Dismiss 37, 107-113; NG Defs.' Mem. Supp. Mot. Dismiss 9-10.) Because Keck alleges, in part, that Defendants negligently interpreted and implemented the rules and procedures pertaining to grievance proceedings, it appears that the applicable statute of limitations may only partially bar Count 10. Further, the Court cannot

adequately address Defendants' sovereign immunity argument or apply the *James* four-factor test[26] given the current stage of the litigation and procedural posture of this case. Thus, it appears this claim would at least partially survive Defendants' motion to dismiss.

Nonetheless, the Court has recommended the dismissal of every claim Keck brings based on Constitutional or federal law, and only questions of state law would remain in this case. The Magistrate Judge thus RECOMMENDS that the District Judge use his discretion in declining to exercise supplemental jurisdiction over this remaining state law claim, pursuant to 28 U.S.C. § 1367(c).[27] Accordingly, the Court RECOMMENDS that Count 10 be DISMISSED WITHOUT PREJUDICE.

### V. Keck's Motion for Leave to File an Amended Complaint and Motion to Join Parties Defendant

On July 22, 2011, Keck filed his Motion for Leave to File an Amended Complaint and Motion to Join Parties Defendant.[28] Keck contends that "[t]he Amended Complaint clarifies and

---

[26] Under *James*, a court must consider the following four factors when determining whether sovereign immunity shields an individual state employee: (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and, (4) whether the act complained of involved the use of judgment and discretion. *James v. Jane*, 282 S.E.2d 864, 869 (Va. 1980).

[27] This statute provides in relevant part: "The district courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c). The Supreme Court of the United States has recognized that "[a] district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866 (2009).

[28] Although Keck's Motion to Join Parties Defendant seeks to add a party defendant, it also seeks to amend the complaint and must be governed by the same standards as a motion to amend. *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010) ("While some courts have concluded that Rule 15(a) does not apply to amendments seeking to add parties, most courts, including this one, have concluded otherwise." (internal citations omitted)); *Adkins v. Labor Ready, Inc.*, 205 F.R.D. 460, 462 (S.D. W. Va. 2001) ("In order to amend a complaint to add

cures what the Defendants have alleged in terms of this Court's Subject Matter Jurisdiction, Proper Defendants, particularizing Causes of Action and specifying Individual Responsibilities and Actions alleged." (Pl.'s Mem. Supp. Mot. Leave File Amend. Compl. 2.)[29]

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court of the United States has instructed courts to "heed" this mandate, holding that amendments should be freely allowed in the absence of considerations such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) ("A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."). Further, delay alone cannot sustain the denial of a motion seeking leave to amend, so long as such delay is not accompanied by prejudice, bad faith, or futility. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999); *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997).

Here, the proposed Amended Complaint contains virtually identical or substantially the same allegations as the original Complaint. Allowing the proposed amendment would not cure the deficiencies which serve as the basis for the recommended dismissals of Counts 1 through

---

additional parties after a responsive pleading has been filed, a movant must seek leave of the court pursuant to Rule 15 of the Federal Rules of Civil Procedure, and he must demonstrate compliance with either Rule 19 or Rule 20 . . . .").

[29] Because this memorandum does not contain page numbers, the Court refers to the pages as numbered by CM/ECF.

12.[30] Because granting leave to file the proposed amended complaint would be futile, the Court

RECOMMENDS that Keck's Motion for Leave to File an Amended Complaint (Docket No. 79)

and Motion to Join Parties Defendant (Docket No. 81) be DENIED. *See Perkins v. United*

*States*, 55 F.3d 910, 917 (4th Cir. 1995) (*citing Glick v. Koenig*, 766 F.2d 265, 268-69 (7th Cir.

1985)); *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420-21 (4th Cir. 1990) ("There is no

error in disallowing an amendment when the claim sought to be pleaded by amendment plainly

would be subject to a motion to dismiss under [Rule] 12(b)(6).").

## VI. Conclusion

For the foregoing reasons, the Court RECOMMENDS that Defendants' motions to

dismiss be GRANTED (Docket Nos. 21, 44, 46), Keck's Motion for Leave to File an Amended

Complaint be DENIED (Docket No. 79), and Keck's Motion to Join Parties Defendant be

DENIED (Docket No. 81). Accordingly, it is RECOMMENDED that Keck's Complaint be

DISMISSED.

The parties are ADVISED that they may file specific written objections to the Report and

Recommendation within fourteen (14) days of the date of entry hereof. Any document submitted

must comply with the following directives:

1. Each objection must be clearly labeled and sequentially numbered. Each objection must be labeled with the corresponding heading from the Report and Recommendation.

2. Each paragraph must be sequentially numbered.

3. Each objection must cite with specificity, and include quotations to, the Report and Recommendation.

---

[30] As discussed above, the most substantial alteration occurs in Count 3 where Keck proposes to include multiple paragraphs in an attempt to allege a conspiracy, and even this proposed amendment would be futile.

4.      Each objection must clearly identify the legal or factual deficiency in the Report and Recommendation. Each objection must include legal or factual support for the claims therein.

Failure to file specific objections in a timely manner to the Report and Recommendation may result in the entry of an Order dismissing the Complaint. *See* Fed. R. Civ. P. 72(b).  It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841, 845 (4th Cir. 1985) (noting the general rule that "a party who fails to object to a magistrate's report is barred from appealing the judgment of a district court adopting the magistrate's findings").

The Clerk is directed to send a copy of the Report and Recommendation to Keck, to counsel of record, and to the Honorable Robert E. Payne.

/s/

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: September 9, 2011

45